Hudson, J.
This action was brought-by the plaintiff under the statute of claim and delivery of personal property. From the evidence upon the trial it appears that the respondents, who were doing business at Waukeegan, 111., were the owners of twenty-one “ Star Wood Pumps ” which were by them shipped on the 2d day of November, 1880, by rail consigned to one II. L. Inman, at Jamestown, Dakota, who had previously ordered the same and was to pay for them the sum of two hundred dollars in ninety days from that date; said pumps arrived in Jamestown via the N. P. N. N., about November 30, 1880, and were unloaded and placed in the freight depot at Jamestown. Immediately after said pumps were put in the depot, the appellant, as sheriff of said county, claimed to levy upon them, under a writ of attachment, in favor of John Deere & Co., against the goods of said II. L. Inman, the consignee. The writ was served by leaving a copy thereof with the defendant therein, H. L. Inman, and notifying said railroad company to hold said pumps subject to said writ. The sheriff did not remove them from the depot nor pay the freight to the railroad company for their transportation. During the transit of said pumps said H. L. Inman became insolvent, of which fact the respondents were notified, and they notified said railroad company of their claim as vendors, by a legal notice' served on the station agent at Jamestown, and to hold said pumps subject to their order on account of said Inman’s insolvency; said notice was served on the 3d day of December, 1880, three days subsequent to the service of said writ of attachment. When said notice of stoppage was served on the company, said pumps were in the depot at Jamestown with the freight unpaid. Said H. L. Inman never received said pumps nor took any action in regard to them. There after-wards the pumps were taken by the sheriff under the claim of said *321 John Deere & Co., removed and sold by him. The freight on same was paid by the attorney of John Deere & Co., on the day of sale.
There are two questions presented in this ease for consideration:
1st. Were these pumps in the actual possession of the consignee at the time of the levy, so that the right of stoppage in transitu was at an end?
2d. Did the appellant sheriff get possession and control of said property by a legal : eizure under the writ of attachment?
The following general principles may be stated as applying to this case: The delivery by the vendor of goods sold to a carrier of any description, either expressly or by implication, named by the vendee, and who is to carry on his account, is a constructive delivery to the vendee, but the vendor has a right, if unpaid, and the vendee be insolvent, to retake the goods before tkey are actually delivered to the vendee: Keeler v. Goodwin, 111 Mass., 490. Goods may be still in transit, though lying in a warehouse to which they have been sent by the vendor on the purchaser’s order: Benj. on Sales, Sec. 846. And they are liable to stoppage as long as they remain in possession of the carrier: Ib. Sec. 841; Clapp v. Peck, 55 Iowa, 270; White v. Mitchell, 37 Mich., 390.
The essential feature of a stoppage in transitu, as has been remarked in many of the cases, is, that the goods should be at the time in the possession of a middle-man, or of some person intervening between the vendor who has parted with, and the purchaser who has not yet received them: Benj. on Sales, Sec. 842.
Counsel for the appellant contended strongly that the pumps were in the constructive possession of H. L. Inman, the consignee, as a fact decisive of the case; but if such constructive possession be conceded, still the vendor had his right of stoppage in trcmsitu *322 for tlie reason that the purchase price was unpaid and the vendee-had not actually received them and was insolvent.
It was also insisted that the railroad company had changed their relation to the goods and became warehousemen, holding them for the consignee. There is no doubt but that tiie carrier may and often does become a warehouseman for the consignee,, but that must be by virtue of some contract or course of dealing between them that when arrived at their destination the character of carrier shall cease and that of warehouseman supervene; but no contract of that kind, or course of dealing, appears anywhere in the evidence, and until something of that kind is shown, the transitu is not at an end. . The carrier cannot change his character so as to become the buyer’s agent to keep the goods for him without the latters consent: Benj. on Sales, Sec. 851.
If this view is correct, then the sheriff could not legally take, the property under a writ against the goods of the consignee, for the reason that he had never acquired title to them. We might drop the discussion at this point, but it has been so strongly insisted by counsel that the sheriff made a valid levy under the attachment that it seems proper that this question should receive some attention.
It appears from what was done by the sheriff, and which it is claimed was a levy, was by leaving a copy with the defendant, Inman, and notifying the railroad company to hold said pumps subject to said writ. This was not taking the property as required by law. At this time the pumps were in the freight depot, with the freight-unpaid; but it appears that Mr. White, the attorney for the attaching creditors, was with the sheriff and told the agent, Mr. Harris, that he would guarantee the freights personally, and that Mr. Harris agreed so to hold them and accept Mr. White as guaranty for the freights, and he, and agents succeeding him, did *323 -so hold them subject to Mr. White’s order; but it also appears that the railroad company refused to accept this guaranty, it being -without their knowledge and consent. The company might well refuse to accept such a guaranty, as it was a contract void by the ■Statute of Frauds and could not have been enforced. It was simply no contract at all. It was a guaranty or promise that Mr. White was at liberty to fulfill or not, at his option. If after it had been made the property had been destroyed by fire or any other circumstance had occurred to render it of no benefit to the guarantor, would he still have stood by it? Such a levy as this does not come up to the requirements of section 204, of the Code of Civil Procedure. A mere paper levy is void. The officer -should take actual possession, but removal is not absolutely necessary, yet there must be actual control and view of the property with power of removal. The property may then be placed in the care of a third party but at the risk of the officer. Such control must be exercised, as if done without the writ would amount to trespass: Rorer on Judicial Sales, Sec. 1243-4; Curey v. Bright, 58 Penn. St., 70-84; 37 Penn. St., 500; Very v. Watkins, 20 How., 469.
It is assumed that the goods were the goods of the consignee, Inman, and it is claimed that Inman so testifies, but that is a question of law. The facts show that they were not his and that he had no right of possession. If Mr. White had been acting for Inman, his action would have placed the goods in the possession of the railroad officials as bailees of the property for Inman, and . the transit would have been at an end. Even in that event this levy could not be maintained. The judgment of the District Court is
Affirmed.
All the Judges concurring.